

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*James G. O'Donohue III*
*Assistant United States Attorney*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*MAIN: 410-209-4800*

October 20, 2025

The Honorable Matthew J. Maddox
United States District Judge
United States District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

  Re: <u>United States v. Cedrick Brinkley</u>
    Criminal No. MJM-24-214

Dear Judge Maddox:

  I am writing to state the government's sentencing recommendation in the above-referenced case. For the reasons discussed below, the government respectfully requests that the Court sentence the defendant to a sentence of 108 months' incarceration, which is below the United States Sentencing Guidelines (U.S.S.G.) for this case but represents by far the longest prison sentence the defendant will have served up to this point in his life.

### Sentencing Procedure

  In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id.* at 51-52. A sentencing court should begin by correctly calculating the applicable guidelines range. *Id.* at 49. After providing the parties with an opportunity to present arguments, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50; *see also United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011).

### Sentencing Guidelines Calculation

  The defendant pled guilty to count one of the indictment, Conspiracy to Commit Firearms Trafficking, in violation of 18 U.S.C. § 933(a)(3).

  The base offense level is **20** pursuant to U.S.S.G. § 2K1.1(a)(4)(B) because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, and the defendant was convicted under 18 U.S.C. § 933.

An additional **4 levels** are added because the offense involved between 8 and 24 firearms, pursuant to U.S.S.G. § 2K2.1(b)(1). An additional **2 levels** are added because the offense involved a stolen firearm, pursuant to U.S.S.G. § 2K2.1(b)(4). Finally, **5 levels** are added because the Defendant conspired to transport, transfer, sell, or otherwise dispose of two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who intended to use or dispose of the firearms unlawfully, pursuant to U.S.S.G § 2K2.1(b)(5)(C)(ii). The defendant therefore has an adjusted offense level of **31**.

The defendant accepted responsibility for his misconduct and, accordingly, the government does not oppose a 2-level reduction in the defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a). The government also agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. Therefore, the adjusted offense level is **28**.

The government agrees with the PSR that the defendant has 3 criminal history points, which makes his criminal history category **V**. PSR ¶ 49.

With an adjusted offense level of **28** and criminal history category of **V**, the defendant's sentencing guideline range is **130-162** months imprisonment.

As explained in more detail below, the government believes that a sentence of 108 months imprisonment is sufficient, but not greater than necessary, to serve the goals of 18 U.S.C. § 3553(a).

**Factors Set Forth in 18 U.S.C. § 3553(a)**

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The government believes the following 3553(a) factors are most relevant in this case:

I.    Nature and Circumstances of the Offense (3553)(a)(1))

The nature and circumstances of the offense counsel in favor of a lengthy prison sentence. Here, the Defendant engaged in a pattern of firearm trafficking with his coconspirator Steven Lee all while he was unable to legally possess firearms himself because of his prior convictions. Brinkley sold an undercover investigator ("the UC") four firearms and fifty rounds of ammunition on April 3, 2024 for approximately $4500. The UC made clear to the defendant that they would be further distributing these firearms to individual who could not legally possess them. The defendant cast safety, legality, and social norms aside, instead looking to continue this illegal business relationship to make money. The defendant engaged in additional firearms transactions on April 17, 2024 (five pistols for $6100) and April 24, 2024 (five firearms for $7800). Among the firearms the defendant sold were four stolen firearms and one that was affixed with a machinegun conversion device. Had it not been for the vigilant work of the UC, the defendant and

2

his coconspirator would have funneled more than a dozen firearms to individuals who could not legally possess firearms – a serious public safety threat.

II.   History and Characteristics of the Offender (3553(a)(1))

The defendant's criminal history is lengthy, dating back to the time he was 18 years old when he committed a robbery in Baltimore County. PSR ¶ 37. However, nearly all of the defendant's convictions that resulted in criminal history points were theft-related and non-violent. He was convicted of theft related crimes in 2015 (PSR ¶ 39), 2016 (PSR ¶ 40), and 2017 (PSR ¶ 41), and 2018 (PSR ¶ 43). He also has a history of driving related offenses, including failure to immediately stop at the scene of an accident (PSR ¶ 42), driving with a revoked license (PSR ¶ 44). More recently, the defendant was convicted of conspiracy to commit assault in the second degree (PSR ¶ 47) and rogue and vagabond (PSR ¶ 48). The defendant has also accumulated criminal history points because of his poor adjustment to supervision in multiple arrest cycles, which resulted in additional prison time. Taking all of this into account, the government would be remiss if it did not recognize that unlike many defendants who come before this Court with a criminal history category V, the defendant's lengthy record of convictions is largely non-violent. The instant matter was by far the most egregious conduct in which the defendant participated.

The defendant lost his father to gun violence when the defendant was just five years old. PSR ¶ 69. However, the defendant did also report that his father sold guns and drugs when he was alive, which provides some context for the defendant's criminal activity related to gun violence. PSR ¶ 70. It does, however, also highlight that the defendant was intimately aware of the dangers of gun violence, which he was contributing to by his actions in this case. The defendant has also battled mental health challenges (PSR ¶ 80) and substance abuse challenge (PSR ¶ 81).

Overall, while the defendant's criminal history is lengthy, it is largely representative of a serial thief. Moreover, the government recognizes the challenges the defendant has confronted from a young age and believes a 108-month sentence would be appropriate.

III.  The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))

A sentence of 108 months incarceration is also appropriate under the circumstances to provide just punishment and adequately protect the public while balancing the factors described above. The defendant's actions here were extremely serious, and a lengthy prison sentence is necessary to deter him and the public from engaging in illegal firearms possession and trafficking. However, up to this point, it appears the longest the defendant has ever been incarcerated was his 112-day sentence in 2020. A 108-month sentence will far exceed that, so the government hopes that such a lengthy sentence, while below the guidelines in this case, will deter the defendant from committing such illegal activity in the future.

IV.     The Kinds of Sentences Available (3553(a)(3))

The "kind of sentences available," 18 U.S.C. § 3553(a)(3), includes imprisonment. Here, codefendant Steven Lee was sentenced to 102 months imprisonment. ECF 69. Defendant Brinkley should be sentenced higher than Lee since he was more intimately involved in the conspiracy, meeting with the UC himself.

Finally, the government believes a 108-month sentence reflects the defendant's timely plea in this case. Although the government does make the standard motion for an extra point deduction under U.S.S.G. § 3E1.1(b) for a timely plea, the impact of such a timely plea here is likely more pronounced than in other cases because of the particular sensitivities of this case: a UC and a confidential information ("CI"). The defendant's plea avoided a situation in which the government would have been forced to present sensitive evidence at trial. A 108-month sentence incorporates such a reality.

For all these reasons, a sentence of 108-months imprisonment is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a). The government thanks the Court for its consideration of this matter.

                Respectfully submitted,

                Kelly O. Hayes
                United States Attorney

         *James G. O'Donohue III*

By:  James G. O'Donohue III
    Assistant United States Attorney

cc: Tony Garcia, Esq.
   Carissa Perez, USPO